IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

GREGORY C. DIBSIE,

           Plaintiff,

     v.

GULF STREAM COACH, INC., et
al.,

           Defendants.

HON. JEROME B. SIMANDLE

Civil Action No. 07-5798

**OPINION**

APPEARANCES:

Gregory Charles Dibsie, Esq.
LAW OFFICE OF GREGORY CHARLES DIBSIE, ESQ.
281 Delsea Drive
Sewell, NJ 08080
    Plaintiff pro se

Richard L. Goldstein, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
    Attorney for Defendant Gulf Stream Coach, Inc.

Thomas M. Kelly, Esq.
TANSEY, FANNING HAGGERTY, KELLY, CONVERY & TRACY
521 Green Street
P.O. Box 5555
Woodbridge, NJ 07095
    Attorney for Defendant General Motors Corp.

Jeffrey J. Brookner, Esq.
WILENTZ, GOLDMAN & SPITZER, PC
90 Woodbridge Center Drive
Suite 900
Woodbridge, NJ 07095
    Attorney for Defendant Spirit International, Inc.

**SIMANDLE**, District Judge:

    This case arises out of Plaintiff's allegations that the

motor home he purchased from Defendant Spirit International, Inc.
("Spirit"), a motor vehicle dealership located in Swedesboro, New
Jersey, was defective and that Defendants have not satisfactorily
complied with their obligations to address those defects.
Plaintiff originally filed this action in the Superior Court of
New Jersey, naming as Defendants Spirit, Gulf Stream Coach, Inc.
("Gulf Stream"), and General Motors Corp. ("GM").  Presently
before the Court is Gulf Stream's motion to transfer venue, or,
in the alternative, to dismiss Plaintiff's Complaint [Docket Item
13].  For the reasons discussed below, the Court will deny Gulf
Stream's motion.

I.    BACKGROUND

      A.    Facts

      In January 2007, Plaintiff entered into negotiations with
Spirit for the purchase of a Gulf Stream Ultra Super C Model
W6341BK motor home, and on January 27, 2007, Plaintiff and Spirit
signed an order form (the "Purchase Order") in which Plaintiff
agreed to purchase the vehicle.  (Pl.'s Opp'n Br. Ex. D.)
Plaintiff paid a $500 deposit in connection with his January 27,
2007 order, and the parties anticipated that the vehicle would be
delivered to Spirit's dealership in March 2007.  (Id.)  The
Purchase Order contained an arbitration clause which provided
that Plaintiff and Spirit

      agree to arbitrate any claim, dispute or controversy . .
      . that may arise out of or relating to the purchase or

2

> lease identified in this . . . Order . . . . There are no
> limitations on the type of claims that must be
> arbitrated, except for New Car Lemon Law and Magnuson-
> Moss Warranty Act claims which are excluded from
> arbitration under this agreement . . . . The arbitration
> shall take place in New Jersey at the address of the
> dealership listed on the retail Order Form.

(Id.)  The Purchase Order was signed by Plaintiff and Chet Bonar,

an employee of Spirit.  (Id.)

On March 22, 2007, Plaintiff returned to the Spirit

dealership to complete his transaction.  Before Plaintiff signed

the final purchase agreement, Bonar directed Plaintiff to review

and sign Gulf Stream's Motorized Limited Warranty (the "Warranty

Agreement").  This document, which Plaintiff signed, contained a

forum selection clause which provides that:

> Exclusive Jurisdiction for deciding any claims, demands
> or causes of action for defects or representations of any
> nature or damages due from such defects or
> representations shall be in the courts in the State of
> Manufacture.  The laws applicable to any litigation,
> dispute, arbitration or any claim whatsoever arising from
> the sale, purchase, or use of the recreational vehicle
> shall be those of the State of Manufacture.  The State of
> Manufacture of the recreational vehicle is Indiana.
>
> This Limited Warranty gives the Purchaser specific legal
> rights that may vary from state to state . . . . Some
> states may prohibit certain exclusions from express
> warranty coverage, and/or the exclusion of remedies and
> implied warranties . . . . Consult your personal attorney
> to determine all rights under the state and federal
> consumer laws, which may offer remedies in addition to or
> different from this Limited Warranty.

(Pl.'s Opp'n Br. Ex. E.)  In addition to the Warranty Agreement,

Plaintiff signed a purchase agreement (the "Purchase Agreement")

with an identical arbitration clause as was contained in the

3

previously signed Purchase Order, that is, providing for arbitration in New Jersey of claims against the dealership. (Id.)

According to Plaintiff, within a matter of months, Plaintiff's motor home developed a wide array of problems. According to Plaintiff, he had the vehicle serviced by Spirit two times, but the problems persisted.  Plaintiff contacted Gulf Stream, which eventually directed Plaintiff to take the vehicle to Risco, Inc., an authorized Gulf Stream repair facility located in Atlantic Highlands, New Jersey.  Plaintiff brought the vehicle to Risco on October 24, 2007, where it remained "in various stages of repair and disassembly" for many months.  (Pl.'s Opp'n Br. 9.)  As Plaintiff represented to the Court at oral argument, he has regained possession of the vehicle, but it continues to exhibit many of the problems that he complained about before it was serviced at Risco.

### B.   Procedural History

Plaintiff filed his Complaint in this action in the Superior Court of New Jersey, Gloucester County, on November 26, 2007, naming Gulf Stream, Spirit, and General Motors Corporation ("GM") as defendants.  Plaintiff's Complaint asserts eight Counts: a claim under the New Jersey Vehicle Warranty Act, N.J.S.A. 56:12-30 (Count I); breach of express warranty (Count II); breach of implied warranty (Count III); three claims under the Magnuson-

Moss Warranty Act, 15 U.S.C. § 2301 <u>et seq.</u> (Counts IV-VI); breach of contract (Count VII); and a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 (Count VIII).

On December 5, 2007, Gulf Stream timely filed a Notice of Removal to this Court pursuant to 28 U.S.C. § 1446(b), asserting that the Court could exercise original jurisdiction over Plaintiff's Magnuson-Moss Warranty Act claims and ancillary jurisdiction over his state law claims.  In its Notice of Removal, Gulf Stream stated that "[t]his court is one of proper venue pursuant to 29 U.S.C. § 1132(a)(2) because subject vehicle was purchased in the State of New Jersey and Defendant Gulf Stream is authorized to do business in the State of New Jersey." (Docket Item 1 ¶ 8.)  On February 13, 2008, Gulf Stream filed the motion to transfer and/or dismiss presently before the Court.

The Court convened a hearing to address Gulf Stream's motion on May 23, 2008, at which Gulf Stream and Plaintiff presented oral argument on the merits of Gulf Stream's motion.[1]  The Court reserved decision.

## II. DISCUSSION

### A.   The Parties' Arguments

Gulf Stream argues that the forum selection clause contained

---

[1]   GM attended the May 23, 2008 hearing but took no position on whether the case should be transferred to the Northern District of Indiana.  Spirit submitted a brief in opposition to Gulf Stream's motion but its counsel was unable to attend the hearing.

in its Warranty Agreement requires that Plaintiff's suit against it be pursued "in the courts in the State of Manufacture," which in this case is Indiana.  (Pl.'s Opp'n Br. Ex. E.)  As Gulf Stream notes, the Supreme Court and the Court of Appeals for the Third Circuit have consistently held that forum selection clauses are enforceable unless the party contesting the enforcement of the clause can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972).  Such clauses are enforceable, Gulf Stream argues, even when they are contained in form contracts that are not negotiated between the parties. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593-94 (1991) (noting that forum selection clauses in form contracts have "the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended").  Gulf Stream argues that the forum selection clause under consideration here is not unreasonable and was not fraudulently obtained, pointing to the fact that the clause is legibly printed on the agreement, not concealed on the back of the page, and set off in its own section entitled "Jurisdiction."  (Pl.'s Opp'n Br. Ex. E.)  According to Gulf Stream, "while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue" through

6

a valid forum selection clause.  <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 880 (3d Cir. 1995).

In light of these teachings on the validity of forum selection clauses, Gulf Stream argues that the Court should transfer this action to the District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  As Gulf Stream notes, when the parties have signed a valid forum selection clause,[2] "the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum."  <u>Jumara</u>, 55 F.3d at 880.  Gulf Stream argues that Plaintiff cannot meet this burden, and that the case should accordingly be transferred to the District Court for the Northern District of Indiana.[3]

---

[2]  As Gulf Stream notes, three courts in this District have upheld the validity of Gulf Stream's forum selection clause in the context of orders transferring lawsuits from the District of New Jersey to the Northern District of Indiana.  <u>See</u> <u>Ramero v. Gulf Stream Coach, Inc.</u>, No. 06-6030, slip. op. (D.N.J. Feb. 19, 2008); <u>Diorio v. Gulf Stream Coach, Inc.</u>, No. 01-5794, slip. op. (D.N.J. Mar. 18, 2002); <u>Naturile v. Ford Motors</u>, No. 00-2032, slip. op. (D.N.J. Sept. 19, 2000).

[3]  In the alternative, Gulf Stream argues that Plaintiff's Complaint should be dismissed pursuant to 28 U.S.C. § 1406(a), which, it argues, authorizes the dismissal of an action where a plaintiff defies the terms of a forum selection clause.  As the Court explains, <u>infra</u>, it is not persuaded by Gulf Stream's argument that the forum selection clause in the Dibsie-Gulf

Plaintiff advances a legion of arguments in opposition to Gulf Stream's motion to transfer.  First, Plaintiff argues that the forum selection clause in his Warranty Agreement with Gulf Stream is superseded and cancelled by the arbitration clause contained in the Purchase Agreement between Plaintiff and Spirit.  According to Plaintiff, the Purchase Agreement specifies that the parties to that agreement agree to arbitrate all claims but "New Car Lemon Law and Magnuson-Moss Warranty Act claims" in New Jersey at the Spirit dealership.  (Pl.'s Opp'n Br. Ex. D.)  Because the Purchase Agreement between Plaintiff and Spirit contained a clause stating that it "comprises the complete and exclusive statement of the terms of the agreement between Customer and Dealer," and because, according to Plaintiff, Spirit was acting as Gulf Stream's agent, Plaintiff argues that the arbitration clause in his Purchase Agreement with Spirit supersedes the forum selection clause in his Warranty Agreement with Gulf Stream.  (<u>Id.</u>)  Relatedly, Plaintiff suggests that Gulf Stream was aware of the allegedly contradictory language contained in Spirit's Purchase Agreement and the confusion that would result from these purportedly inconsistent clauses, which, Plaintiff claims, indicates that the forum selection clause was

_____

Stream contract makes this forum an improper venue for Plaintiff to pursue his claims.  Because Gulf Stream has not demonstrated that its forum selection clause requires that this action be transferred to the Northern District of Indiana, its motion to dismiss will likewise, <u>a</u> <u>fortiori</u>, be denied.

the result of "fraud or overreaching," <u>Bremen</u>, 407 U.S. at 15, and should accordingly be invalidated.

Because the forum selection clause in the Dibsie-Gulf Stream agreement should be considered invalid, Plaintiff argues, the burden remains on Gulf Stream to prove that the transfer is warranted under 28 U.S.C. § 1404(a).  First, Plaintiff argues, § 1404(a) makes clear that the Court may only transfer a case to a district "where it might have been brought."  In this case, since one of the Defendants - Spirit - is a New Jersey business with no contacts with Indiana, the action could not originally have been brought in Indiana, since Indiana courts would lack personal jurisdiction over Spirit, and thus Indiana is not a place where "it [the civil action] might have been brought," as required by § 1404(a), <u>supra</u>.

Even if Gulf Stream could overcome this jurisdictional hurdle, Plaintiff argues, numerous considerations that courts take into account when contemplating a § 1404(a) transfer weigh in favor of retaining the matter in New Jersey.  These considerations include: (1) the fact that all Defendants have availed themselves of doing business in New Jersey and are authorized to do business in this State; (2) interests of judicial economy, particularly in light of the fact that litigation and discovery has already commenced in this District; (3) the expense of transporting New Jersey witnesses to Indiana,

and the fact that the subject motor vehicle is presently located in New Jersey; and (4) the familiarity of this Court with the laws of the State of New Jersey, under which several of Plaintiff's claims arise.

Plaintiff next argues that considerations of public policy require that Gulf Stream's motion be denied.  According to Plaintiff, permitting Gulf Stream to transfer this matter to Indiana would undermine the intentions of the New Jersey legislature in passing the State's Lemon Law, since it would "require a lawsuit to be held outside New Jersey, and without reference to New Jersey law, . . . [causing] the Plaintiff's rights under the Lemon Law to be waived, limited and/or disclaimed."  (Pl.'s Opp'n Br. 22-23.)  According to Plaintiff, the equivalent consumer protection statute in Indiana is limited to vehicles purchased in that State and does not apply to motor homes.  See Indiana Code 24-5-13-3.  Plaintiff advances a parallel public policy argument with regard to his New Jersey Consumer Fraud Act claim, which, he argues, reflects the State's public policy interests in protecting its citizens from deceptive marketplace practices.  Such interests would be undermined, Plaintiff argues, if an Indiana-based court were called upon to apply the New Jersey statute, particularly in light of the fact that the terms of Indiana's consumer protection laws provide fewer remedies for plaintiffs than do New Jersey's.

Plaintiff further argues that Gulf Stream has waived its right to transfer venue because it litigated the case in this District for more than two months before filing its motion to transfer.  See Graver Tank & Mfg. Corp. v. New England Terminal Co., 125 F.2d 71 (1st Cir. 1942) (finding that defendant, which filed its motion to transfer nearly two years after the complaint was filed and after having submitted two motions to dismiss, had waived right to contest the plaintiff's choice of venue).  According to Plaintiff, Gulf Stream's waiver is evidenced by its participation in the litigation proceedings in this District, including having filed an Answer and asserting cross-claims against its co-Defendants; having participated in an Initial Scheduling Conference before Magistrate Judge Donio; having prepared initial disclosures pursuant to Rule 26(a), F. R. Civ. P.; and having agreed to appear at a scheduling conference on April 7, 2008.

Finally, Plaintiff argues that even if the forum selection clause contained in the Warranty Agreement were found to be valid and enforceable, Plaintiff would have to litigate his claims in Indiana and New Jersey, and because of the commonality of the claims and the indispensability of the parties, the actions would ultimately be consolidated before this Court.  According to Plaintiff, because the Indiana court would not be able to obtain

personal jurisdiction over Spirit,[4] but because the matters involve "a common question of law or fact," Rule 42(a), F. R. Civ. P., the matters would be appropriate candidates for consolidation, which would bring the actions back before this Court at the end of the day.

**B.   Analysis**

As the Court explains below, Gulf Stream's motion will be denied.  While the Court finds that the Dibsie-Gulf Stream forum selection clause is valid and was not, as Plaintiff suggests, superseded by his Purchase Agreement with Spirit, the law of this Circuit provides that such clauses are entitled to "substantial consideration" but not "dispositive weight."  <u>Jumara</u>, 55 F.3d at 880.  In this case, even taking into account such consideration as must be accorded to the forum selection clause, the Court finds that transfer would be inappropriate, because it does not appear that the District Court for the Northern District of Indiana is a "district . . . where [this action] might have been

---

[4]   In addition to the question of whether the Indiana court would have personal jurisdiction over Spirit, Plaintiff argues that Spirit's "forum selection clause" requires that claims be brought in New Jersey.  The clause in question – the arbitration clause in the Dibsie-Spirit Purchase Agreement – requires that all claims brought under the contract "except for New Car Lemon Law and Magnuson-Moss Warranty Act claims" be arbitrated in New Jersey.  (Pl.'s Opp'n Br. Ex. D.)  The arbitration clause thus does not inhibit the Plaintiff's ability to litigate in Indiana any claim that this Court might be able to entertain – that is, those claims exempted from the Agreement's mandatory arbitration provision.

brought," which is a threshold requirement for a § 1404(a)
transfer.  Additionally, the balance of public and private
considerations that bear on the Court's § 1404(a) analysis weigh
heavily against transfer.  Gulf Stream's motion will accordingly
be denied.

          1.  <u>Validity of the Forum Selection Clause</u>

     First, the Court finds that the forum selection clause
contained in the Dibsie-Gulf Stream Warranty Agreement is valid,
and was not superseded by the terms of Plaintiff's Purchase
Agreement with Spirit.  As the parties recognize, although a
plaintiff's choice of forum is generally entitled to deference,
"such deference is inappropriate where the plaintiff has already
freely contractually chosen an appropriate venue." <u>Jumara</u>, 55
F.3d at 880.  Such contractual arrangements are enforceable in
the absence of a showing that the clause was procured by means of
"fraud or overreaching." <u>Bremen</u>, 407 U.S. at 15.  Plaintiff has
made no showing that suggesting that the forum selection clause
was the product of fraud.  <u>See Ginsberg v. Bistricer</u>, No.
C-113-98, 2007 WL 987169, *15 (App. Div. Apr. 4, 2007) (to prove
fraud-in-the-inducement, plaintiff must show "a misrepresentation
of material fact; knowledge or belief by the defendant of its
falsity; intent that the other party rely on the
misrepresentation; and reasonable reliance thereon by the other
party") (citing <u>Nolan v. Lee Ho</u>, 120 N.J. 465, 472 (1990)).

Plaintiff has not demonstrated that any of these factors are
present in this case.

Moreover, the Court is not persuaded by Plaintiff's argument
that the arbitration clause in his Purchase Agreement with Spirit
supersedes the forum selection clause in his Warranty Agreement
with Gulf Stream.  Under New Jersey law, "[t]he general rule is
that a subsequent contract covering the same subject matter and
made by the same parties, but containing terms inconsistent with
the former contract so that the two cannot stand together,
rescinds, supersedes and substitutes for the earlier contract and
becomes the only agreement on the part of the parties on the
subject matter."  Kant v. Seton Hall University, No. 03-6135,
2008 WL 65159, *7 (D.N.J. Jan. 4, 2008) (quoting Rosenberg v. D.
Kaltman & Co., 28 N.J. Super. 459, 463-64 (Ch. 1954)) (emphasis
added).  The Purchase Agreement does not supersede the Warranty
Agreement because the two agreements describe Plaintiff's
relationship with two separate parties – the Purchase Agreement
"comprises the complete an exclusive statement of the terms of
the agreement between Customer and Dealer," (Pl.'s Opp'n Br. Ex.
D) (emphasis added), whereas the Warranty Agreement explains the
terms of Plaintiff's agreement with Gulf Stream, the manufacturer
of the motor home.  (Pl.'s Opp'n Br. Ex. E.)

The Court thus finds that the forum selection clause
contained in Plaintiff's agreement with Gulf Stream is valid, and

14

that this clause is entitled to "substantial consideration" in the Court's § 1404(a) analysis. <u>Jumara</u>, 55 F.3d at 880.

2.   <u>Section 1404(a) Analysis</u>

The existence of a valid forum selection clause does not end the Court's inquiry, but instead operates as a substantial weight in favor of transfer that must be balanced along with the host of private and public considerations that courts take into account when ruling on § 1404(a) motions.  Among the private interests that the Court of Appeals has identified are:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

<u>Id.</u> at 879 (citations omitted).  Among the public interests to be considered are:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

<u>Id.</u> at 879-80 (citations omitted).  Where the parties have signed a forum selection clause, "[a]lthough the parties' agreement as to the most proper forum should not receive dispositive weight, it is entitled to substantial consideration."  <u>Id.</u> at 880.  In

the face of such an agreement, plaintiffs faced with a § 1404(a) motion must "bear the burden of demonstrating why they should not be bound by their contractual choice of forum." <u>Id.</u>  The circumstances of this case indicate that Plaintiff has borne this burden, and that transfer is thus not called for.

a.   <u>Personal Jurisdiction over Spirit</u>

First and most critically, it does not appear to the Court that the District Court for the Northern District of Indiana is a "district . . . where [this action] might have been brought," which, as the Court noted, <u>supra</u>, is a threshold requirement for the authorization of a transfer under § 1404(a).  This is because, as Plaintiff and Spirit have argued, it does not appear that Spirit is amendable to personal jurisdiction in the Northern District of Indiana.

Federal Rule of Civil Procedure 4(e) allows a district court to assert personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state where the district court sits.  <u>See</u> Fed. R. Civ. P. 4(e).  In order for Mr. Dibsie to have been able to bring this lawsuit in Indiana, it would be necessary to establish that the Indiana courts could exercise personal jurisdiction over Spirit without offending the Due Process Clause of the Fifth Amendment.  <u>See</u> <u>American Cyanamid Co. v. Eli Lilly and Co.</u>, 903 F. Supp. 781, 785 (D.N.J. 1995) (noting that courts have construed Indiana's long-arm statute "as

16

extending the jurisdictional powers of a federal court sitting in Indiana to the outer limits of what due process permits").  The long-standing formulation regarding the constitutionality of a court's exercise of personal jurisdiction over a non-resident defendant is that the defendant "must have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  International Shoe v. Washington, 326 U.S. 310, 316 (1945).

The constitutionality of a court's exercise of personal jurisdiction over a defendant may be established under one of two analytical routes: "specific jurisdiction" or "general jurisdiction."  In order for a defendant to be amenable to the exercise of personal jurisdiction under the specific jurisdiction analysis, the defendant must have sufficient minimum contacts with the forum state, and the plaintiff's claims must arise out of the defendant's activities in the forum.  See Pinker v. Roche Holdings Ltd., 292 F.3d 361, 369 n.1 (3d Cir. 2002).  Under the general jurisdiction analysis, "the contacts between the defendant and the forum need not be specifically related to the underlying cause of action in order for an exercise of personal jurisdiction over the defendant to be proper," id., but the plaintiff must show "significantly more than mere minimum contacts to establish general jurisdiction."  Provident Nat. Bank

17

v. California Federal Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d
Cir. 1987).

Here, the Court understands Gulf Stream to be arguing that
Spirit would be amenable to jurisdiction in Indiana under a
general, rather than specific, jurisdiction analysis, since the
record does not suggest that Plaintiff's claims against Spirit
arise out of Spirit's activities in Indiana.[5]  In order for a
court to exercise general personal jurisdiction over a defendant,
the plaintiff must demonstrate that the defendant has "continuous
and systematic contacts with the forum state," Provident Nat.
Bank, 819 F.2d at 437 (internal quotations and citations
omitted), such that the defendant "should reasonably anticipate
being haled into court there."  World-Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 297 (1980).  As the Court of Appeals
explained in Provident National Bank, under the general personal
jurisdiction analysis, "the plaintiff must show significantly
more than mere minimum contacts to establish general
jurisdiction," and "[t]he nonresident's contacts to the forum

_____

[5]  To the contrary, all negotiations and transactions
between Plaintiff and Spirit took place in New Jersey.  While, as
is explained, infra, Spirit directed certain activities toward
Indiana, Plaintiff's claims against it do not relate directly
those activities, but stem instead from the New Jersey-based
transaction between himself and Spirit.  See O'Connor v. Sandy
Lane Hotel Co., Ltd., 496 F.3d 312, 323 (3d Cir. 2007) (under the
specific jurisdiction analysis, "the jurisdictional exposure that
results from a contact [must be] closely tailored to that
contact's accompanying substantive obligations").

must be continuous and substantial."  819 F.2d at 437; see also Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982) ("the facts required to assert this general jurisdiction must be extensive and persuasive") (internal quotations and citation omitted); American Cyanamid Co., 903 F. Supp. at 786 ("the standard for establishing general personal jurisdiction is a high one").

Based on the record before it, the Court concludes that Spirit would not be amenable to the exercise of general personal jurisdiction over it by a court in Indiana.  The only evidence in the record of Spirit's contacts with Indiana is an "Application for Dealership" submitted by Spirit to Gulf Stream in September 2004.  (Gulf Stream's Reply Br. Ex. A.)  The fact that Spirit entered into such a relationship with Gulf Stream and proceeded to sell Gulf Stream's vehicles in New Jersey thereafter does not, by itself, demonstrate the sort of continuous, systematic, and substantial contacts between Spirit and Indiana that would be required in order for a court in that state to exercise general personal jurisdiction over Spirit.  See, e.g., Ajax Enterprises, Inc. v. Szymoniak Law Firm, P.A., No. 05-5903, 2008 WL 1733095, *2 (D.N.J. Apr. 10, 2008) (citing cases to show that "[e]xamples of contacts that could establish general jurisdiction in the forum state are the existence of: facilities, offices, employees, registered agents, real property, telephone listings or bank

19

accounts"). Although Spirit inarguably had an ongoing business relationship with Gulf Stream, the parties' submissions do not suggest that this relationship rose to the level of the "very high threshold of business activity" that would be required for general personal jurisdiction. Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F. Supp. 2d 629, 633 (D.N.J. 2004) (citing the finding in Compagnie des Bauxites de Guinea v. Ins. Co. of N. America, 651 F.2d 877, 891 n. 2 (3d Cir. 1981), that a "'daily presence' in the forum and activities such as weekly advertising, regular solicitation of business, substantial product sales, and the maintenance of a telephone number in the forum meet the threshold").

Because the record before the Court does not establish that the District Court for the Northern District of Indiana would have personal jurisdiction over Spirit, that court does not appear to be a "district . . . where [this action] might have been brought." § 1404(a). Although Plaintiff might be able to pursue his claims against Gulf Stream in Indiana, while litigating his claims against Spirit before this Court, the Court finds, as explained in the following subsection, that such an outcome would serve neither "the convenience of parties and witnesses, [nor] the interest of justice," id., and will thus deny Gulf Stream's motion.

20

b.   <u>Remaining § 1404(a) Considerations</u>

Against Plaintiff's and Gulf Stream's original forum preference, as evidenced by the forum selection clause in their Warranty Agreement, the Court must weigh the host of public and private interests identified by the Court of Appeals in <u>Jumara</u> in assessing the merits of Gulf Stream's motion to transfer.  Almost without exception, these considerations – to the extent that they are applicable to this case – weigh heavily against transfer.

First, the vast majority of the public interests set forth in <u>Jumara</u> indicate that the case should not be transferred.  With regard to "practical considerations that could make the trial easy, expeditious, or inexpensive," <u>Jumara</u>, 55 F.3d at 879, the simple fact is that two trials are more expensive than one.  If Plaintiff were compelled to litigate half of this dispute in Indiana and the other half before this Court, discovery would occur in two fora, witnesses would likely be required to testify twice, two juries would be impaneled to hear virtually the same presentation of facts, and two courts, rather than one, would be required to address the parties' motion practice.  In other words, considerations of judicial economy weigh heavily against transferring this matter to Indiana, where only part of the case could proceed in light of the jurisdictional hurdles identified

21

above.[6]

Likewise, "the local interest in deciding local controversies at home" and "the familiarity of the trial judge with the applicable state law" both indicate that this Court is a more appropriate forum for the parties' dispute.  Id. at 879-80. Plaintiff's claims center around a vehicle sale that took place in New Jersey, and his Complaint alleges violations of State law with which this Court is familiar.  While federal district courts are frequently called upon to interpret the laws of jurisdictions outside of the states in which they sit, Jumara's express reference to a trial court's familiarity with local law highlights the considerations of judicial economy that underlie the public interest factors that figure into the Court's § 1404(a) analysis.  As this discussion makes clear, these considerations militate against transfer.

In addition, many of the private interests identified in Jumara further indicate that the case should not be transferred.

---

[6]  While the Court does not go so far as to find that Gulf Stream waived its right to move to transfer this action, Gulf Stream's delay in filing its motion is relevant to the considerations of judicial economy identified in Jumara.  Gulf Stream filed its Notice of Removal in this matter on December 5, 2007, but did not file the motion to transfer presently under consideration until over two months later on February 13, 2008, after conferences before the Magistrate Judge had taken place and discovery had commenced.  The transfer that Gulf Stream requests would be more consistent with interests of judicial economy had it filed its motion before these judicial and litigation resources were expended.

With regard to where the "claim arose," id. at 879, it is
abundantly clear that New Jersey has a more significant
connection to Plaintiff's claims than Indiana – the consumer and
the dealer are both New Jersey citizens, and the vehicle at the
heart of the parties' dispute was purchased, repaired, and
presently remains in New Jersey.  It would likewise serve "the
convenience of parties and witnesses" to litigate this dispute in
a single jurisdiction where the events underlying the action took
place, rather than requiring parties and witnesses to a dispute
that arose in New Jersey to commute between New Jersey and
Indiana as two cases stemming from the same set of facts proceed
along parallel tracks in different jurisdictions.  § 1404(a).
Moreover, while the inconvenience to the Indiana manufacturer in
defending this case in New Jersey is not negligible, it is more
than justified by the overwhelming New Jersey contacts in this
transaction, wherein the vehicle, the repair shops, the consumer,
and the dealer are all located.  Finally, the Court is mindful
that meaningful steps in this litigation occurred in this Court
after Gulf Stream removed the case wand before it moved to
enforce the forum selection clause by transfer.

        Weighing against the "substantial consideration" that the
Court gives to the parties' original choice of forum as evidenced
by the forum selection clause in the Warranty Agreement, then, is
an abundance of compelling reasons not to transfer this case on

account of the inefficiency, waste, and inconvenience that such a transfer would precipitate.  <u>Jumara</u>, 55 F.3d at 880.  Indeed, it is noteworthy that apart from the forum selection clause, not a single factor identified in <u>Jumara</u> weighs in favor of transfer. While not unmindful of the significant consideration that is accorded to such agreements, the Court recognizes that forum selection clauses are "not dispositive" of the § 1404(a) issue. <u>Id.</u>  The Court has accounted for the factors that figure into an assessment of whether a § 1404(a) transfer is in order, and has found that the vast majority of these factors – including jurisdictional considerations that would require this litigation to proceed in two fora if the motion to transfer were granted – weigh heavily in against transfer.  The Court will thus deny Gulf Stream's motion.  The accompanying Order will be entered.


**May 28, 2008**                         **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          United States District Judge

24